OPINION AND JUDGMENT ENTRY
Appellant, Jimmy B. Reed, appeals from a judgment of the Toledo Municipal Court, where, after a jury trial, appellant was convicted of driving under the influence of alcohol, a violation of Toledo Municipal Code Section 333.01(A)(1), and resisting arrest, a violation of Toledo Municipal Code Section 525.09.
The facts relevant to the disposition of each of appellant's assignments of error shall be set forth prior to a discussion of that assignment.
Appellant's first assignment of error reads:
 "I. The trial court erred prejudicially in permitting the arresting officer to offer an opinion going to the ultimate issue in the case, when the issue of fact was within the experience, knowledge and comprehension of the jury, and hence was unnecessary and inadmissible, as it would not assist the jury to understand the evidence or to determine the ultimate fact at issue."
John C. Anderson, the Toledo Police Officer who arrested appellant, provided the following testimony at appellant's trial[1]. On October 9, 1994, at almost midnight, Anderson was on patrol in downtown Toledo, Lucas County, Ohio. He was the only officer in the marked patrol car. Anderson saw a car being operated without any headlights. Anderson pulled to the side of the road and allowed the vehicle to pass. He then observed the car go left of center, over a double yellow line, for seventy feet before making a left turn. At that point, Anderson activated the overhead lights of his patrol car, intending to stop the vehicle, but the car continued to the next block where it turned and was then parked.
Appellant exited the vehicle and started to cross the street. Officer Anderson parked his car behind appellant's vehicle, exited his patrol car and shouted for appellant to stop. Appellant continued walking until the officer reached him and stood in front of him. Anderson noticed the strong odor of alcohol on appellant's breath. He also noted that appellant was unsteady "on his feet." The officer asked appellant for his motor vehicle operator's license. Initially, appellant refused to cooperate. He eventually presented his license to Anderson and, after further discussion, agreed to perform several field sobriety tests.
Despite the officer's instructions and after indicating he understood those instructions, appellant failed three of the tests, specifically the "one leg stand" test, the "finger to nose" test and the "heel to toes" test. Appellant was unable to recite the entire alphabet the first time he tried, but he successfully completed the alphabet on his second attempt. He failed the gaze nystagmus test because he did not comply with the officer's instructions as to how that test must be performed.
After this testimony, the state engaged in the following colloquy with Officer Anderson:
 "Q. Now, Officer, have you had any training with respect to how to administer these tests you've been talking about?
"A. Yes, I have.
"Q. Can You tell the jury what that training is?
 "A. I've had a number of classes. Initially, I've been through two police academies. I've been a police officer for going on almost fourteen years now, so I've had a number [sic] of training and experiences regarding the performance of these tests, how to perform these tests; and I've arrested probably hundreds of people for driving under the influence of alcohol.
 "Q. In your personal life, have you ever had occasion to see intoxicated people?
"A. Yes, I have.
 "Q. So based upon your personal experiences, life experiences, your professional experiences, did you come to from an opinion as to whether this defendant was intoxicated?"
Appellant's co-counsel then objected, arguing that this called upon the officer to determine an "ultimate issue of fact." The court overruled the objection, finding that the prosecution laid a sufficient foundation to elicit the officer's opinion. The question was repeated and the officer stated that in his opinion, appellant was driving under the influence of alcohol. The state then asked Anderson whether, in his opinion, appellant was under the influence of alcohol to the extent that it would impair his driving ability. Appellant objected on the same grounds previously stated, the officer answered in the affirmative and the court overruled the objection.
Appellant argues that even though Officer Anderson's opinions as to the ultimate issue in this case are not excludableper se, they should be excluded because the jury "could readily draw the necessary inferences and conclusions without the aid of the officer's opinion." Lee v. Baldwin (1987) 35 Ohio App.3d 47,49. Appellant points to the testimony of Ward Belair, a security guard at a nearby bank building, who observed appellant's behavior and aided in subduing appellant when he struggled with Officer Anderson during his arrest. Belair corroborated Anderson's testimony and also testified that appellant appeared to be intoxicated. Thus, appellant maintains that Anderson's opinions were simply used to discredit him and bolster the credibility of the officer.
The admission or exclusion of evidence is a matter committed to the sound discretion of the trial court. O'Brien v.Angley (1980), 63 Ohio St.2d 159, 163. Consequently, for the admission or exclusion of certain evidence to be overturned on appeal, there must be a showing that the trial court acted in an unreasonable, arbitrary or unconscionable manner. State v. Adams
(1980), 62 Ohio St.2d 151; State v. Davis (1988), 49 Ohio App.3d 109.
In City of Toledo v. Starks (1971), 25 Ohio App.2d 162, this court determined that "an opinion by any person concerning the lack of sobriety of a defendant is admissible in evidence without the witness first being qualified as an expert, so long as that person in all probability has had sufficient experience with intoxicated persons to be qualified to form and express an opinion and has opportunity to observe the defendant." See, also, Statev. Helmling (Sept. 30, 1997), Portage App. No. 96-P-0269, unreported (provided a proper foundation is laid, the opinion testimony of an arresting officer is relevant to the factual determination of whether a defendant was driving while under the influence of alcohol); State v. Wargo (Oct. 31, 1997), Trumbull App. No. 96-T-5528, unreported (police officer may provide lay testimony as to his opinion of a defendant's intoxication/impaired driving ability). In the instant case, Officer Anderson's qualifications and experience and his personal observations of appellant were established. Therefore, the trial court did not abuse its discretion by admitting his opinion testimony. Appellant's first assignment of error is found not well-taken.
In his second assignment of error, appellant asserts:
 "The trial court erred prejudicially by permitting the Appellant to act as `co-counsel' without warning him of the dangers of doing so, and without ascertaining that he was knowingly and intelligently doing so."
Pursuant to the Sixth Amendment, as applied to the states through the Fourteenth Amendment, a criminal defendant may waive the right to counsel and choose self-representation, provided the waiver is voluntary, knowing, and intelligent.Faretta v. California (1975), 422 U.S. 806; State v. Gibson
(1976), 45 Ohio St.2d 366. To establish an effective waiver of right to counsel, the trial court must make "sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." State v. Gibson, 45 Ohio St.2d 366 at paragraph two of the syllabus.
Nonetheless, in State v. Keenan (1998), 81 Ohio St.3d 133,138, the Ohio Supreme Court held that a request to act as co-counsel does not involve the Sixth Amendment right to counsel or to represent one's self. The court reasoned that a defendant has no right to hybrid representation. Id. Based on the Ohio Supreme Court's holding, we are compelled to conclude that when a defendant asks to act as co-counsel in his criminal trial, a court is not bound to follow the requirements of Faretta andGibson. See, also, State v. Beverly (Oct. 2, 1997), Cuyahoga App. No. 70915, unreported.
In the case before us, appellant's trial counsel, Ron Wingate, informed the court at the beginning of trial that his client wished to act as co-counsel. The court granted appellant's request and appellant, along with his appointed counsel, was permitted to cross-examine witnesses and participate in closing arguments. Appellant never asked the court to discharge his counsel or made a request to represent himself. Therefore, pursuant to Keenan, appellant's constitutional right to represent himself was never invoked, and his second assignment of error is found not well-taken.
Appellant's third assignment of error contends:
 "The trial court committed prejudicial error when it improperly refused to admit into evidence a copy, provided by the State in discovery, of the dispatch record, which record was relevant both to explain Appellant's performance on the sobriety tests and to demonstrate the untrustworthiness of the officer's testimony."
When Officer Anderson attempted to arrest appellant, appellant began to struggle with him. According to Anderson, he sprayed mace at appellant, but, to the best of the policeman's knowledge, no mace was sprayed. Belair saw the officer spray the mace at appellant without any apparent effect. Anderson dropped the can of mace. Belair testified that appellant attempted to gain possession of the mace can. Belair kicked the can out of the way and helped Officer Anderson subdue appellant. It was actually Belair who removed Officer Anderson's handcuffs from his belt and managed to handcuff appellant. It was later discovered that Belair had mace on his face and hands "from wrestling with the subject."
During the altercation, appellant's glasses broke causing a small laceration above one of his eyes. According to both Anderson and Belair, the police officer called dispatch only after appellant was handcuffed and patted down. A patrol wagon arrived shortly thereafter, and appellant was transported to the hospital and then to the police station.
In his testimony, appellant maintained that there was a person sitting in Anderson's patrol car who made him so uneasy that he could not perform well on the field sobriety tests. Appellant also claimed that this person ran over and maced him while Anderson straddled appellant's back and beat his face into the concrete.
Appellant attempted to offer a dispatch record as evidence that another person was in the patrol car with Anderson. Appellant indicated that the entire incident was a "set-up" and that the dispatch record showing a call made much earlier was evidence of this fact. The prosecution objected on the basis of relevance. The court sustained the objection. Appellant failed to make a proffer of the excluded evidence.
On appeal, appellant argues that the dispatch record was relevant to explain why he did not perform well on the sobriety tests and would have cast serious doubt as to the credibility of Officer Anderson.
Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence which is not relevant is inadmissible. Evid.R. 402. It is within the sound discretion of the trial court to apply its common experience and logic to determine the relevance of evidence.State v. Lyles (1989), 42 Ohio St.3d 98, 99-100. A reviewing court will only overturn the rulings of a trial court where there is a clear abuse of discretion and the defendant has been materially prejudiced as a result. State v. Maurer (1984),15 Ohio St.3d 239, 265. Furthermore, a trial court's improper evidentiary ruling, over an objection, cannot be the basis for reversal of the judgment when the alleged error was harmless.State v. Hart (1991), 72 Ohio App.3d 92, 99.
In the case before us, appellant failed to make a proffer of the substance of the dispatch record. Thus, we find it difficult to discern the relevancy of this document to appellant's allegations. Apparently, appellant believed that the document established that "someone" called dispatch either prior to the beginning of the incident or during the period when Officer Anderson was following appellant's vehicle. Because Officer Anderson denied calling dispatch until after appellant was handcuffed, appellant reasons that the dispatch record is relevant to show that his statement concerning another individual in the patrol car is true. While the connection is very tenuous, let us assume the document is relevant for that purpose. If so, the alleged existence of a second person in the car simply tests the credibility of Officer Anderson and appellant, and the court's failure to admit the dispatch record is harmless error.
Appellant and his co-counsel cross-examined Anderson and the other witnesses in this case as to the timing of the call to dispatch and the presence of another individual in the patrol car. Appellant called a second security guard whose testimony was more favorable to his version of the events. Reed also presented the testimony of the emergency room nurse and his hospital record to show that the record failed to indicate that he was under the influence of alcohol. Appellant testified on his own behalf and divulged the part this other individual played in his apprehension and arrest. Thus, evidence of whether appellant was so distracted by this person that he did not perform well on the sobriety tests and whether Officer Anderson's testimony was truthful was presented to the jury. Accordingly, the trial court's failure to admit a dispatch record with doubtful relevance to this same issue was not prejudicial to appellant. Appellant's third assignment of error is found not well-taken.
For his fourth and final assignment of error, appellant asserts:
 "The trial court committed plain error when it failed to sua sponte declare a mistrial when the prosecutor expressed before the jury his personal disbelief of crucial evidence offered by the Appellant."
During the cross-examination of appellant, appellant was asked to admit that he did not do well on the "one leg stand" test. He stated: "I did them to the best of my ability and watching that other individual in the car, sir." The prosecutor commented: "Not for one minute am I going to give any credence to the fact that somebody was in there." Appellant's co-counsel objected, and the prosecutor immediately withdrew the remark. Appellant did not request a mistrial.
Because appellant did not move for a mistrial, he waived any claim of error on the part of the trial court but plain error.State v. Joseph (1995), 73 Ohio St.3d 450, 461. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Crim.R. 52(B). An appellate court will not reverse for plain error unless an appellant establishes that the outcome of the trial clearly would have been different but for the alleged error. State v.Waddell (1996), 75 Ohio St.3d 163, 166. Notice of plain error is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Phillips (1995), 74 Ohio St.3d 72, 83.
DR 7-106(C)(4) provides that an attorney cannot state his opinion as to the credibility of a witness at trial. Consequently, the prosecutor in the present case could not express his personal opinion regarding appellant's credibility[2].State v. Apanovitch (1987), 33 Ohio St.3d 19, 24; State v. Mundy
(1994), 99 Ohio App.3d 275, 304. However, appellant has not established that, absent the objectionable statement, the outcome of the trial would have been different or that the trial court's failure to order a mistrial sua sponte was a manifest miscarriage of justice. Accordingly, appellant's fourth assignment of error is found not well-taken.
On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Toledo Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal.
 JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J. JUDGE
James R. Sherck, J. JUDGE
Richard W. Knepper, J. JUDGE
CONCUR.
[1] Appellant testified on his own behalf at trial. His testimony was diametrically opposed to Officer Anderson's. However, the trier of fact obviously found Anderson's testimony, as well as the testimony of two security guards who aided Officer Anderson, to be more credible than appellant's testimony. We cannot substitute our judgment for that of the trier of fact on the issue of witness credibility or the weight to accord that evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[2] The prosecutor may comment on the credibility of a witness based upon the evidence. State v. Watson (1991), 61 Ohio St.3d 1,10.